UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GLORIA A. CHAVEZ,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 18-cv-05683-JSC

**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 18 & 19

Plaintiff Gloria Chavez seeks social security benefits for a combination of mental and physical impairments, including back problems and posttraumatic stress disorder ("PTSD"). (Administrative Record ("AR") 239.) Before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 18 & 19.) Because the decision of the Administrative Law Judge ("ALJ") to deny benefits is supported by substantial evidence and otherwise free of legal error, the Court DENIES Plaintiff's motion, and GRANTS Defendant's cross-motion.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 12.)

United States District Court
Northern District of California

national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL HISTORY

Plaintiff filed applications for Title II and Title XVI Social Security Disability Benefits in January 2015. (AR 106, 134, 214-23.) Both applications were denied, and Plaintiff's subsequent request for reconsideration was also denied. (AR 136-41, 147-53.) Plaintiff then requested an administrative hearing before an ALJ, which was held in May 2017. (AR 37.) In September 2017, the ALJ issued a decision denying Plaintiff's application, (AR 15-31), after which Plaintiff requested review by the Appeals Council. The Appeals Council denied Plaintiff's request. (AR 1-3.) On September 17, 2018, Plaintiff filed this action for judicial review pursuant to 42 USC §§ 405(g) and 1383(c)(3). (Dkt. No. 1.)

## ADMINISTRATIVE RECORD

Plaintiff was born on July 1, 1963. (AR 41.) She resides in Modesto, CA. (AR 74.) Plaintiff's application alleges that she has been unable to work since February 1, 2014 because of physical and mental impairments. (AR 74, 106, 134, 214-23.)

## I. Medical History

### A. Diagnoses

Plaintiff's function report submitted in conjunction with her benefits application reports a diagnosis of "mild arthritis in [her] lower back" in February 2013. (AR 275.) Plaintiff also reports diagnoses of PTSD in February 2013 and October 2014. (AR 276.) An August 2014 discharge summary from Stanislaus County Behavioral Health & Recovery Services lists active diagnoses of "depressive disorder" and "alcohol dependence." (AR 330.) Licensed Clinical

Social Worker Sandra L. Perez conducted an individual psychotherapy evaluation of Plaintiff in February 2015 and diagnosed her with anxiety disorder, alcohol dependence, posttraumatic stress disorder, and depression. (AR 356.) In August 2015, Plaintiff's treating physician Dr. Zaina El-Isa examined Plaintiff and diagnosed her with chronic pain disorder, right knee pain, degenerative lumbar disc disease, and lumbar scoliosis. (AR 381.) Associate Clinical Social Worker Nicholas B. Egger conducted a mental evaluation of Plaintiff in August 2015, and diagnosed her with PTSD, depression, and alcohol abuse. (AR 389.)

### B. Medical Evaluations

#### 1. Treating Nurse Practitioner Elizabeth Azwell, FNP

In April 2017, Plaintiff's treating Nurse Practitioner Elizabeth Raines Azwell completed a Residual Functional Capacity ("RFC") Questionnaire. (AR 501.) The questionnaire included diagnoses of degenerative joint disease of the left hip, cervical lumbar spine degenerative disc disease, as well as arthritis and instability in both knees. (*Id*.) As for work-related limitations, Ms. Azwell opined that since February 2013 Plaintiff: can "sit and stand/walk" for a total of less than 2 hours in an 8-hour working day; needs to shift positions at will from sitting to walking, and her legs should be elevated if she sits for prolonged periods; must take unscheduled breaks every 10-15 minutes; requires a can or assistive device to ambulate; can rarely lift less than 10 pounds; can rarely look down or turn her head; can occasionally twist but never stoop, bend, crouch, climb ladders, and rarely climb stairs. (AR 502-03.) Ms. Azwell opined that Plaintiff would likely be absent from work "[m]ore than four days per month." (AR 503.)

As for Plaintiff's mental condition, Ms. Azwell opined that Plaintiff is incapable of taking on even "low stress" jobs, and that any level of stress causes Plaintiff to experience mental paralysis. (AR 501.) Ms. Azwell noted that Plaintiff constantly experiences pain or other symptoms that interfere with the attention and concentration needed to perform simple work tasks. (*Id*.)

#### 2. Consultative Examining Physician Dale Van Kirk

On September 23, 2015, Dr. Dale Van Kirk, conducted an orthopedic examination in conjunction with Plaintiff's application for benefits. (AR 408.) Plaintiff self-reported that she can

stand or walk for around 50 minutes and that "[s]itting is not a problem." (*Id.*) Plaintiff also reported that she stopped working in January 2014 "because she had a motor vehicle accident and lost her driver's license," and was not currently working due to her "chronic back pain." (*Id.*)

On examination, Dr. Van Kirk noted that Plaintiff could sit comfortably, walk around the room, get on and off the examination table without difficulty, did not limp, and had a full range of motion without pain or difficulty in all but her dorsolumbar spine. (AR 409.) Dr. Van Kirk diagnosed Plaintiff with "[c]hronic lumbosacral musculogligamentous strain/sprain likely associated with degenerative disc disease." (AR 410.) As for work-related limitations, Dr. Van Kirk reported that Plaintiff: could stand and/or walk for a total of six hours during an eight-hour workday; was "limited to only occasional postural activities . . . because of chronic back pain"; had no limitations sitting; did not require assistive devices; could lift and frequently carry 10 pounds; and had no manipulative limitations. (*Id.*)

### 3. Consultative Examining Psychologist David Pingitore

In September 2015, Plaintiff was referred to Psychologist David Pingitore for an examination as part of her application for Social Security disability benefits. (AR 402.) Dr. Pingitore noted that Plaintiff last worked "as an in-home health care service person" until she was terminated in 2014 "due to her DUI." (AR 403.) On examination, Dr. Pingitore found that Plaintiff appeared "[s]lightly depressed" but did not suffer from communication difficulties. (*Id.*) Dr. Pingitore also noted that Plaintiff had full range of affect, could maintain concentration during the interview, and possessed adequate deductive reasoning skills. (*Id.*) Dr. Pingitore found, however, that Plaintiff had difficulty performing division and subtraction, limited awareness of "social norms and judgment," and could not interpret proverbs. (*Id.*)

Under the category DMS-V DIAGNOSIS, Dr. Pingitore reported: "Alcohol Abuse in self-reported full remission; Depression, NOS.; Rule out Post Traumatic Stress Disorder." (AR 404.) Dr. Pingitore concluded that "[b]ased on [the] mental status exam, results obtained, self-reported history and behavior and attitude during [the] examination[,] there is little objective evidence that the claimant is unable to engage in substantial employment by reasons of mental disorder." (*Id.*)

### 4. Non-Examining State Agency Physicians

4

Non-examining state agency physicians reviewed Plaintiff's medical records and concluded that while Plaintiff's impairments cause some limitations on her ability to perform work activities, those "conditions are not severe enough to keep [Plaintiff] from working." (AR 74-89.)

### C.    Third-Party Function Report

Jacqueline Chavez, Plaintiff's daughter, completed a third-party function report in June 2015 describing Plaintiff's limitations. (AR 247-255.) Ms. Chavez reported that she sees Plaintiff "almost everyday" and that they "hang out," shop, and go on trips together. (AR 247.) Ms. Chavez noted that Plaintiff's daily tasks include attending to her personal hygiene, preparing meals, cleaning, laundry, grocery shopping, and sitting and resting. (AR 248.) Ms. Chavez reported that Plaintiff cannot lift more than 10 pounds, experiences pain when walking up and down stairs, has difficulty sleeping due to pain, and has difficulty being around crowds due to anxiety and depression. (AR 247-48.) In addition, Ms. Chavez noted that Plaintiff can walk only 30 yards, after which Plaintiff needs to rest for 15-20 minutes before being able to walk again. (AR 252.)

## II.    ALJ Hearing

On May 5, 2017, Plaintiff appeared with her representative at her scheduled hearing before ALJ Sheila Walters in Stockton, California. (AR 37.) Plaintiff, Vocational Expert ("VE") Mr. Hughes, and third party Mark Kolber testified at the hearing. (*Id.*)

### A.    Plaintiff's Testimony

Plaintiff reported that she worked as a Customer Service Representative in 2002, as an Accounts Payable Clerk in 2007, provided in-home Child Care in 2009, and was an In-Home Elder Caretaker in 2013. (AR 46-50.) In response to the ALJ's question regarding why Plaintiff felt she was unable to work, Plaintiff stated:

> [M]y neck, the back of my neck hurts and then the sides and then it spreads to my shoulders and my upper back, then down my back and then my lower back. My lower back is the worst then it's to my left hip all the way down my legs and my right knee because my right knee I've been falling on my right knee a lot.

(AR 51.) Plaintiff asserted that she "could walk for a block and then half way that's when my hip starts hurting." (AR 54.) When asked by the ALJ how long Plaintiff could walk

uninterrupted, she answered "five to 10 minutes." (AR 55.) Plaintiff also stated that she could sit uninterrupted for "five to 10 minutes." (AR 56.) The ALJ asked Plaintiff whether she could work at "a job where [she] could sit whenever [she] wants to and stand whenever [she] wants to but [she'd]have to work eight hours a day, five days a week." (AR 61.) Plaintiff responded, "I don't believe I can." (*Id.*)

Plaintiff reported being a victim of domestic violence, stating that she sustained "great bodily harm" and that episodes of past domestic violence are the source of Plaintiff's anxiety and depression. (AR 61-62.) Plaintiff also disputed the findings of the consultative examiner, Dr. Van Kirk. (AR 62.) The ALJ asked about Dr. Van Kirk's determination that Plaintiff "could sit without limitation and stand . . . for about six hours out of an eight hour day." (*Id.*) Plaintiff contested that finding, stating that the appointment lasted "three to five minutes" and Dr. Van Kirk did not ask Plaintiff any questions. (*Id.*) Plaintiff also testified that neither Dr. Van Kirk nor a nurse performed any range of motion tests during the examination. (AR 62-63.)

**B. Mr. Kolber's Testimony**

Mr. Kolber testified that he has lived with Plaintiff for two years and that he spends mornings with Plaintiff before he goes to work. (AR 71.) Mr. Kolber "observed that [Plaintiff] just really just has a hard time getting around. She can't stand for more than maybe five or 10 minutes at a time. She can't sit for more than five or 10 minutes at a time." (AR 71-72.) Mr. Kolber further testified that Plaintiff "tries to clean" but "struggles to take care of a one-bedroom apartment" and "[h]er daughter has to come over and help sometimes." (AR 72.)

**C. Vocational Expert's Testimony**

The VE testified that a hypothetical person who could "sit for six hours of an eight hour work day" and is limited to "simple, repetitive tasks," frequent "climbing of ramps and stairs" and "frequent balancing, stooping, kneeling, crouching and crawling," but "precluded from climbing ladders, ropes and scaffolds" could perform Plaintiff's past relevant work as a check cashier, a cashier II, and an accounting clerk as described in the DOT. (AR 65-67.) Plaintiff's counsel asked the VE whether a hypothetical person could perform the jobs mentioned if the person had to: "take an unscheduled break . . . every hour for 15 minutes"; elevate her legs "about 20 percent

of the work day"; and be "absent more than four days a month." (AR 69.) The VE responded

"no," stating that such accommodations were "not consistent with competitive employment." (*Id.*)

### III.    ALJ's Decision

On August September 13, 2017, the ALJ issued a written decision denying Plaintiff's

application and finding that Plaintiff was not disabled within the meaning of the Social Security

Act based on the testimony, evidence, and the Social Security Administration's five-step

sequential evaluation process for determining disability. (AR 16.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity

since February 1, 2014, the alleged onset date, through her date of last insured of December 31,

2016. (AR 17.)

At step two, the ALJ concluded that the objective medical evidence indicated that

Plaintiff's degenerative disc disease of the lumbar and cervical spine; scoliosis of the thoracic

spine; mild degenerative joint disease of the sacroiliac joints; cirrhosis; degenerative joint disease

of the knees; chronic pain syndrome, and mental impairments variously diagnosed as PTSD,

depression, general anxiety disorder, alcohol abuse, and opioid dependence constitute "severe

impairments." (AR 18 (citing 20 C.F.R. 404.1520(c), 416.920(c)).) The ALJ further determined

that Plaintiff's hand-related pain was non-severe based on treatment records demonstrating that

"the claimant's hand pain is only documented a single time, which is not generally suggestive of a

limiting condition." (AR 18.) In addition, the ALJ determined that Plaintiff's rheumatoid arthritis

was non-severe because it "is not a condition that is generally diagnosed through observation or

subjective complaints alone." (*Id.*)

At the third step, the ALJ concluded that "[t]he claimant does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 19 (citing 20 CFR 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, 416.926).) In reaching this conclusion, the ALJ first

considered listing 1.02, noting that Plaintiff's record "does not reflect that the claimant is unable to

ambulate effectively or perform fine and gross movements effectively, as required under 1.02."

(AR 19.) The ALJ then considered listing 1.04, noting that "diagnostic imaging within the record

does not demonstrate nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication that rises to the level of severity required by 1.04" (*Id.*) The ALJ then considered listing 5.05, noting that Plaintiff does not satisfy "any of the laboratory or diagnostic requirement 5.05, she has required no transfusions, and there is no sign that she has end stage liver disease." (*Id.*) Finally, in considering Plaintiff's mental impairments, the ALJ determined that "[t]he severity of the claimant's mental impairments . . . do not meet or medically equal the criteria of listing 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.15 (Trauma- and Stressor-Related Disorders)." (*Id.*) The ALJ noted that none of Plaintiff's mental impairments caused her extreme limitations in "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (*Id.*) The ALJ also found that, "there is a general lack of consistent and noteworthy abnormalities in the claimant's mental status examinations." (*Id.*) Based on these findings, the ALJ determined that Plaintiff has no more than "mild limitations" due to her mental impairments. (AR 19-21.)

In between steps three and four, the ALJ considered Plaintiff's RFC and concluded that Plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations:

> She is able to lift and carry ten pounds frequently and twenty pounds occasionally; she is able to sit for six to eight hours of an eight hour workday; she is able to stand and/or walk for six to eight hours of an eight hour workday; she is limited to frequent climbing of ramps and stairs; she is precluded from climbing of ladders, ropes, and scaffolds; she is limited to frequent balancing, stooping, kneeling, crouching, and crawling; and she should avoid concentrated exposure to extreme cold and wetness.

(AR 21.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.) The ALJ noted a letter from Dr. Kanchan Basi at The Permanente Medical Group, Inc., in

which Dr. Basi referenced X-rays from February 2014. (AR 429.) The ALJ found this evidence

to be inconsistent with Plaintiff's allegations of the severity of her limitations at that time. (*Id.*)

The letter noted "only . . . early signs of arthritic changes with minimal vertebrae out of place."

(*Id.*) Further, the ALJ found that musculoskeletal abnormalities were not apparent in June 2014.

(AR 22.) The ALJ concluded that "[s]uch findings, or lack thereof, are inconsistent with the

claimant's allegations of becoming substantially limited around the time of her alleged onset

date." (*Id.*) Regarding Plaintiff's alleged mental impairments, the ALJ noted that Plaintiff works

on her computer for 2 hours a day, which appeared to be inconsistent with her alleged mental

impairments. (AR 26.) In addition, the ALJ found that Plaintiff's treatment records suggested

that she stopped working due to being fired for a DUI, rather than a physical or mental

impairment. (*Id.*)

As for the medical opinion evidence, the ALJ afforded considerable weight to the

orthopedic consultative examiner's opinion, who found that Plaintiff could perform work at the

light level, with occasional postural limitations and limited exposure to cold and damp

environments, because the record as a whole supported this opinion. (AR 27.) The ALJ assigned

"[c]onsiderable weight to the State agency psychological consultants, who found no severe

psychological impairments." (*Id.*) The ALJ found that the consultants' opinions were consistent

in that the record did not support Plaintiff having "chronic significant mental abnormalities or

indicate that [Plaintiff] requires invasive psychiatric treatment." (*Id.*) The ALJ next afforded

"[p]artial weight . . . to the opinions of the State agency medical consultants," who found Plaintiff

capable of a medium exertional level and occasional ladder climbing, because "such a

determination is consistent with the record as a whole, including the finding of the consultative

examiner." (AR 27.) The ALJ afforded "[p]artial weight . . . to the opinion of the psychological

consultative examiner [Dr. Pingitore]" because, like the State agency psychological consultants,

Dr. Pingitore found plaintiff's mental impairments to be non-severe, and found that Plaintiff was

not limited by social deficits. (AR 28.) The ALJ assigned "[l]ittle weight . . . to the opinion of

Elizabeth Azwal [sic] F.N.P.C.," because "Ms. Azwal [sic] is not an 'acceptable medical source'

as defined by 20 CFR 404.1513, 416.913, and SSR 06-03p." (*Id.*)

As to the Third-Party statement from Plaintiff's daughter, the ALJ gave it "full consideration" and noted that it supported the various impairments alleged by Plaintiff. (*Id.*) The ALJ concluded however that the "lay opinions therein do not amount to evidence that would change the determinations made in this decision according to SSA Regulations." (*Id.*)

At step four, the ALJ cited the VE's testimony that a hypothetical claimant with Plaintiff's RFC could perform Plaintiff's past relevant work as a check cashier, cashier, and an accounting clerk, (AR 29), and work as a photocopy machine operator, housekeeping cleaner, and laundry press operator, (AR 30). The ALJ "conclude[d] that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 31.) Thus, the ALJ did not reach step five and determined that Plaintiff "has not been under a disability, defined in the Social Security Act, from February 1, 2014, through the date of this decision." (*Id.* (citing 20 CFR 404.1520(f) and 416.920(f)).)

### DISCUSSION

Plaintiff contends that the ALJ committed two errors: (1) the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the "severity and frequency of her symptoms and the side effects of her treatment"; and (2) the ALJ failed to provide a "germane reason" for rejecting the lay testimony of Mr. Kolber and Plaintiff's daughter. (Dkt. No. 18 at 13.) The Court addresses each argument in turn and concludes that the ALJ's decision is free of reversable error.

### I.    Credibility Determination

#### A.  Legal Standard

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of

10

malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002). Thus, "general findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. The ALJ must instead "state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

**B. The ALJ's Analysis**

Applying the two-step analysis, the ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.) Because Plaintiff met the first part of the test, the ALJ must provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. Here, the ALJ's decision meets the "clear and convincing" standard.

The ALJ determined, in pertinent part:

> The longitudinal treatment as well as the objective and observational findings documented within the record are generally inconsistent with the extreme limitations alleged by [Plaintiff]. While [Plaintiff] has undergone treatment, it has not been of the frequent and invasive nature that is generally associated with the extreme limitations alleged. Likewise, the objective and observational findings contained within the examination and treatment notes are reflective of an individual limited to no greater extent than [the RFC].

(AR 22.) To support her determination the ALJ cited specific records regarding: (1) Plaintiff's treatment history and the objective medical and observational findings in relation to her alleged functional limitations; (2) inconsistencies between "signs of substance abuse and dependence in the record" and Plaintiff's report of same to treatment providers; (3) Plaintiff's activities of daily living; and (4) inconsistencies between the record and Plaintiff's testimony regarding her reason

11

for leaving work in 2014.  (*See* AR 22-26.)

First, the ALJ discussed Plaintiff's treatment records in relation to her "musculoskeletal conditions and overall pain" in chronological order.  (AR 22-24.)  The ALJ cited specific treatment records and examination reports from June 2014 through April 2017 and addressed inconsistencies between Plaintiff's subjective complaints of pain and limitation and the objective and observational findings contained therein.  (*Id.*)  The ALJ further cited specific treatment records where Plaintiff's medical providers recommended non-invasive, conservative treatment including "directions that [Plaintiff] should engage in increased activity, which would not be expected if her treating sources believed her to be limited to the extreme extent she alleges."  (AR 23 (citing among others AR 658 (December 2015 treatment record)).)

The ALJ next discussed Plaintiff's mental health treatment records in chronological order and again cited specific instances that conflict with Plaintiff's self-reported limitations.  (AR 24-26.)  In particular, the ALJ cited specific instances where Plaintiff's mental health status was found to be "essentially normal" at the time of treatment or not reflective of "noteworthy abnormalities" that would restrict Plaintiff's functioning beyond the RFC.  (AR 25-26.)  Where the record did show evidence of mental impairment, the ALJ acknowledged it, noting that "[t]he mental status finding from the claimant's pain treatment continued to suggest some issues with mood, affect, disconnected thought content, and decreased concentration"; however, the ALJ found that the impairments were "not consistently documented, and the findings did not appear to be biased [sic] upon any in-depth evaluation."  (AR 26.)  The ALJ found that while "the record is not generally reflective of limiting mental conditions . . . out of an abundance of caution, the [ALJ] did consider the claimant's ability to perform work if she were limited by her mental conditions."  (AR 18.)  Further, the ALJ determined that if Plaintiff "were limited [by her mental condition], she would be limited to no greater extent than simple, repetitive task, which [as noted in the decision], would not affect her capacity to perform other work."  (AR 25.)

The ALJ then briefly addressed inconsistencies between Plaintiff's reported substance abuse and the medical treatment records.  The ALJ noted that Plaintiff's "suggestions of being clean and sober since November 2014" (AR 26 (citing AR 403 (September 2015 consultative

examination with Dr. Pingitore))) were inconsistent with the record, which indicated that Plaintiff "violat[ed] her pain management agreement and test[ed] positive on a drug abuse panel (*id.* (citing AR 443 (January 2016 treatment record indicating that Plaintiff "violated pain agreement last year") & 585[2] (June 2016 treatment record indicating that Plaintiff tested "positive for opiates and hydrocodone" and including diagnosis of "[o]pioid dependence"))). The ALJ found that "[s]uch inconsistencies in reporting are not supportive of her subjective complaints." (*Id.*) Generally, such evidence can constitute a specific, clear and convincing reason for discounting Plaintiff's testimony. *See Thomas*, 278 F.3d at 959 (finding no legal error where ALJ based adverse credibility determination in part on plaintiff's "conflicting information about her drug and alcohol usage"). Here, however, it is not "clear and convincing" that the cited records bear on Plaintiff's credibility because Plaintiff made the statement to Dr. Pingitore in September 2015, and the cited January 2016 treatment record noting Plaintiff's "violat[ion] of her pain agreement" states only that the violation occurred "last year." (*See* AR 403, 443.) In other words, Plaintiff's statement to Dr. Pingitore could have been true at the time she made it. As such, the Court agrees with Plaintiff that the ALJ could not rely on the cited evidence regarding Plaintiff's substance abuse history in making the credibility determination. (*See* Dkt. No. 18 at 17-18 (citing AR 26).)

The ALJ also discussed Plaintiff's self-reported activities of daily living and found that "those too are reflective of much more intact functioning than alleged," citing specific examples that conflicted with the physical and mental limitations alleged. (AR 26 (citing AR 276 (Plaintiff's function report stating that she cares for her "significant other" by "cook[ing], wash[ing] dishes, vacuum[ing], [doing] laundry, [and] mak[ing] his lunch for work the next day") & 408 (September 2015 consultative examination report in which Plaintiff reported "She is able to do whatever cooking is required. She is able to do the household chores, vacuuming and mopping and taking care of the apartment."))). Such evidence is properly considered in discrediting Plaintiff's credibility. *See Thomas*, 278 F.3d at 959 ("The ALJ also found that [the plaintiff] was

---

[2] The ALJ's decision cites "Ex 14F/80," however, as Plaintiff notes, that citation appears to be in error and the relevant document is found at AR 585. (*See* Dkt. No. 18 at 18 n.1.)

13

able to perform various household chores such as cooking, laundry, washing dishes, and shopping.").

Finally, the ALJ noted that "the record reflects that [Plaintiff] was removed from her work due to receiving a DUI[,] not because she was physically or mentally incapable of such work." (AR 26 (citing AR 403 (containing Plaintiff's statement to Psychologist David Pingitore that she had been "relieved from duty due to her DUI" in January 2014)).)  The ALJ found that the inconsistency between the record and Plaintiff's testimony regarding her reason for leaving work in 2014 "suggests that it was no her impairments preventing her from engaging in work."  (*Id.*)  The ALJ did not err in considering that inconsistency as evidence regarding Plaintiff's credibility. *See Thomas*, 278 F.3d at 959 (finding "the ALJ's negative conclusions about [the plaintiff's] veracity" supported where ALJ found the plaintiff's "lack of candor" in other regards "carries over to her description of physical pain").

In sum, the ALJ's credibility determination satisfies the clear and convincing standard based on her discussion of Plaintiff's alleged pain and functional limitations and the specific, substantial evidence that detracts from the credibility of Plaintiff's testimony.  *See Dodrill*, 12 F.3d at 918 (noting that to satisfy the "clear and convincing" standard, the ALJ must "state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *see also Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (noting the "ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse [credibility] determination is based.").  The Court is neither required nor permitted to reweigh the evidence and substitute its conclusion for that of the ALJ.  *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (noting that if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner") (internal quotation marks and citation omitted).  Accordingly, the Court concludes that the ALJ did not err in evaluating Plaintiff's testimony regarding the pain and functional limitations caused by her conditions.

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff asserts that the ALJ improperly relied only on a lack of objective medical findings in discrediting Plaintiff's subjective

testimony regarding her symptoms. (Dkt. No. 18 at 14-15.) Not so. As previously discussed, the ALJ also discussed inconsistencies in the record regarding Plaintiff's reported daily activities and her testimony regarding same, and inconsistencies regarding Plaintiff's stated reason for leaving work in 2014. Thus, the ALJ's credibility determination did not *solely* rely on objective medical evidence. Further, the ALJ's discussion of Plaintiff's longitudinal treatment history did not solely discuss the objective findings in the record. In certain instances, the ALJ also noted the examiner's observations and Plaintiff's own reported functioning. (*See* AR 23 (noting that during examination in September 2015, Plaintiff "set forth that she was able to engage in most day-to-day activities, which is not suggestive of substantial limitations," and further noting the examiner's observations demonstrating "generally intact functioning") (citing AR 408-09); *see also* AR 24 (noting that Plaintiff denied "musculoskeletal and neurological issues" during treatment in November 2016, which was consistent with the examiner's findings) (citing AR 481).) Thus, the ALJ did not impermissibly discredit Plaintiff's testimony "based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added).

Second, Plaintiff argues that the ALJ improperly found that Plaintiff's symptoms are "controlled" by medication. (Dkt. No. 18 at 15.) The ALJ noted, however, that "there were . . . signs that the claimant's pain was controllable with her medication, which would not be expected of an individual who is so affected by her conditions and pain that she is precluded from working." (AR 23 (citing AR 385 (August 2015 treatment report noting that "Pt reports pain meds help with pain which she says is high but a controllable level")).) Thus, the ALJ did not conclude that Plaintiff's pain was "controlled" by medication. The ALJ instead cited the record to support her credibility determination regarding Plaintiff's testimony on the debilitating effect of her pain symptoms. In other words, it was not the sole basis for the ALJ's credibility determination but instead cited as another inconsistency between Plaintiff's testimony and the record.

Third, Plaintiff argues that the ALJ erred in characterizing Plaintiff's treatment as "conservative" and discrediting her subjective testimony on that basis. (Dkt. No 18 at 15.) In support of her determination, however, the ALJ cited multiple instances in Plaintiff's treatment

15

records showing that Plaintiff was advised to increase routine physical activity or otherwise exercise, (AR 23-24 (citing among others AR 394, 608, 658, 672, 678, 685, 693, 695, 697, 699)), and was assigned only noninvasive, conservative treatment options, (*id.* (citing among others AR 394, 458, 482, 166, 170, 174, 181, 187-93, 15F/2-3, )). Thus, because the ALJ's finding regarding Plaintiff's conservative treatment regimen is supported by substantial evidence of record the Court cannot second-guess that finding. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing.").

Plaintiff counters that the ALJ erred in failing to consider the extensive treatment she has received for her symptoms, including "numerous doctor visits, several imaging studies done (AR 397-8, 481, 490-1, 508), . . . treat[ment] with narcotic pain medications such as Norco, muscle relaxants, neuropathic pain medication and an injection (AR 366, 508), laser therapy (AR 679), physical therapy (AR 445), and regular chiropractic treatment (AR 508-510, 543), and was advised to reduce her physical activity to avoid further injury. (AR 367, 531)." (Dkt. No. 18 at 16.) Again, however, in support of her determination that Plaintiff received "relatively conservative treatment," the ALJ cites Plaintiff's treatment records and points to specific instances where the treatment recommended is inconsistent with the severity of Plaintiff's subjective complaints. (AR 22-24.) Further, none of the treatment records cited by Plaintiff conflict with the ALJ's overall determination that the treatment was "relatively conservative." The lone reference to an "injection" is contained in a May 12, 2015 treatment record, (*see* AR 366), and Plaintiff received noninvasive "cold laser" therapy on one occasion in November 2015, (*see* AR 679). That treatment does not render the ALJ's determination fatally flawed. *See Gutierrez*, 740 F.3d at 523 (noting that if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner") (internal quotation marks and citation omitted).

Fourth, Plaintiff argues that the ALJ erred in discrediting Plaintiff's credibility regarding her alleged mental health impairments "based on an alleged lack of mental health treatment or hospitalizations for her condition" because the Commissioner failed to develop the record. (Dkt. No. 18 at 16 (citing among others *Armstrong v. Comm'r of Soc. Sec.*, 160 F.3d 587, 589 (9th Cir.

1998) ("Although [the plaintiff] has the burden of proof, the ALJ has a duty to assist in developing the record.")).) Plaintiff asserts that several records were not obtained despite being "mentioned" by Plaintiff "during her application process"; specifically, records from therapist Tena Williams, Familias Unidas, and records from a hospitalization at Doctors' Medical Center in San Pablo. (Dkt. No. 18 at 16.) Defendant counters that Plaintiff has waived this argument because the ALJ "specifically asked Plaintiff, through counsel, if she had an opportunity to review the record and if any new exhibits needed to be offered into evidence, Plaintiff unequivocally responded, '[t]he record is complete.'" (Dkt. No. 19 at 8 (quoting AR 39).) The Court agrees that Plaintiff's failure to raise this issue at her hearing before the ALJ waives the argument here. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We now hold that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."). The Court notes that Plaintiff's reply brief did not reassert this argument. (*See generally* Dkt. No. 20.)

Fifth, Plaintiff argues that the ALJ erred by relying on the examination report of consultative orthopedist Dr. Van Kirk in discrediting Plaintiff's testimony "because the examination was extremely brief" and the findings were not reflective of Plaintiff's symptoms, which wax and wane. (Dkt. No. 18 at 16.) Plaintiff's argument is unpersuasive, however, because Dr. Van Kirk's examination was but one of multiple treatment notes and examination reports the ALJ specifically cited in her credibility determination.

Sixth, Plaintiff argues that the ALJ erred by relying on Plaintiff's reported activities of daily living because the ALJ "ignore[d] the context of [Plaintiff's] statements." Not so. In discussing Plaintiff's reported activities, the ALJ noted that Plaintff "states that she helps care for her significant other," and "[g]enerally, the ability to care for another is suggestive of one's ability to care for herself." (AR 20 (citing AR 276 (Plaintiff's function report)).) Further, the ALJ noted that Plaintiff "is able to prepare meals, do the laundry with some assistance, clean the kitchen, clean most parts of the bathroom, vacuum, use public transportation, go out alone, shop in stores, count change, and handle a savings account. This is demonstrative of generally intact day-to-day functioning." (*Id.* (citing AR 276-78).) The ALJ further addressed Plaintiff's activities of daily

living elsewhere in her decision, noting that Plaintiff's function report "essentially indicated that she does many household chores for both herself and her significant other," which "would not be expected of an individual limited to the extreme extent alleged; rather, this is indicative of an individual who remains functionally intact for the most part." (AR 26 (citing AR 276).) The cited sections of Plaintiff's function report track the ALJ's characterization. (*See* AR 276-78.) The function report also states that Plaintiff "walk[s] around the apartment complex with [her] significant other on [the] weekend," and walks by herself during the week. (AR 279.) Plaintiff reported going out to eat and shopping with others at least once a week. (*Id.*) The ALJ also cited the September 2015 consultative examination report, noting that:

> [Plaintiff] informed the consultative examiner that she is able to do the household chores required to take care of an apartment. (Ex 7F/1). In addition, the claimant stated that she does computer work for 2 hours a day, which seems inconsistent with allegations of substantial mental limitations. (Ex 7F/1).

(AR 26 (citing AR 408).) The September 2015 examination report's "activities of daily living" section supports the ALJ's determination, stating, in its entirety:

> [Plaintiff] lives in an apartment with her boyfriend. She is able to do whatever cooking is required. She is able to do the household chores, vacuuming and mopping and taking care of the apartment. What she is able to do on a regular basis is as follows: She gets up in the morning, takes a shower and has some breakfast. She does not have a driver's license. Her boyfriend drove her to the clinic today. She does not take walks or ride a bicycle. She watches TV about six hours a day. She does computer work about two hours a day. She reads about two hours a day. Hobbies that she used to love but can no longer [do] include working out at the gym.

(AR 408.) Again, the cited evidence supports the ALJ's characterization. Thus, the ALJ did not err in relying on Plaintiff's activities of daily limiting in discrediting her symptom testimony because the ALJ's finding is "properly supported by the record, and sufficiently specific." *See Thomas*, 278 F.3d at 958.

Finally, Plaintiff argues that the ALJ erred in citing Plaintiff's substance abuse and DUI in 2014 to discredit her testimony. (Dkt. No. 18 at 17 (citing AR 26).) As previously discussed, the Court agrees that the cited evidence regarding Plaintiff's substance abuse history does not support the ALJ's credibility determination. However, the ALJ's finding regarding the DUI does support

her credibility determination. Plaintiff testified that she stopped working in February 2014 due to lower back pain. (AR 49-50.) The ALJ noted, however, that "the record reflects that [Plaintiff] was removed from her work due to receiving a DUI[,] not because she was physically or mentally incapable of such work." (AR 26 (citing AR 403 (containing Plaintiff's statement to Psychologist David Pingitore that she had been "relieved from duty due to her DUI" in January 2014)).) The ALJ found that the record was thus "inconsistent with [Plaintiff's] allegations and suggests that it was not her impairments preventing her from engaging in work." (AR 26.)

Plaintiff counters that her DUI is not inconsistent with her testimony because Plaintiff "stated that her drinking was often a response to increased levels of pain and the symptoms of her PTSD." (Dkt. No. 18 at 18.) Plaintiff misses the ALJ's point, however. The ALJ did not cite Plaintiff's alcohol use and DUI as general evidence that discredits her credibility; instead, the ALJ cited the *inconsistency* in Plaintiff's testimony regarding her reason for leaving work in February 2014 and her firing in January 2014 due to a DUI. The record supports the ALJ's finding regarding that inconsistency.

\*\*\*

Because the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony regarding the pain and functional limitations caused by her conditions, the ALJ's credibility determination is free of legal error.

## II.     Failure to Credit Lay Testimony

### A.  Legal Standard

An ALJ's failure to consider lay testimony constitutes harmless error if the testimony contains no alleged limitations beyond those alleged by the plaintiff and the ALJ discredits the plaintiff's testimony based on clear and convincing evidence. *Molina,* 674 F.3d at 1116-17, 1122 (noting that the "ALJ's failure to discuss the [third parties'] testimony would have been harmless if the ALJ had provided legally sufficient reasons for rejecting the claimant's own testimony"). Thus, "if an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations," a district court "cannot ignore the ALJ's reasoning and reverse the agency merely

United States District Court
Northern District of California

1    because the ALJ did not expressly discredit each witness who described the same limitations." *Id.*

2    at 1121.

3        **B.  The ALJ did not err in her treatment of the third-party testimony**

4        Plaintiff argues that the ALJ's failure to consider the testimony of live-in partner, Mr.

5    Kolber, constitutes reversible error.  (Dkt. No. 18 at 19.)  Plaintiff further alleges that the ALJ did

6    not assign proper weight to the testimony of Plaintiff's daughter, Ms. Chavez.  (Dkt. No. 18 at 19.)

7    The Court disagrees on both scores.  To the extent the ALJ erred in not discussing Mr. Kolber's

8    testimony or assigning adequate weight to Ms. Chavez's report, the errors were harmless because

9    the ALJ provided sufficient reasons for discrediting Plaintiff's subjective complaints describing

10   the same limitations.

11       Mr. Kolber's testimony at the hearing did not expand on Plaintiff's allegations of pain and

12   limited functioning.  Mr. Kolber testified that Plaintiff cannot sit for more than five to 10 minutes

13   at a time, and that Plaintiff cannot stand for more than five to 10 minutes at a time.  (AR 72.)

14   These statements are consistent with Plaintiff's hearing testimony.  (*See* AR 55-56 (describing

15   how long Plaintiff can walk, sit, and perform cleaning activities in her apartment.).)  Mr. Kolber

16   further testified that Plaintiff has difficulty attempting to clean their apartment.  The limitations

17   noted by Mr. Kolber track those asserted by Plaintiff.  Thus, the ALJ's failure to discuss Mr.

18   Kolber's testimony does not constitute reversible error.  *See Molina,* 674 F.3d at 1116-17, 1121-

19   22.

20       Plaintiff further alleges that the ALJ did not assign proper weight to the testimony of

21   Plaintiff's daughter, Ms. Chavez.  (Dkt. No. 18 at 19.)  As previously discussed, the ALJ

22   "reviewed and [gave] full consideration" to Ms. Chavez's report, but determined that "the lay

23   opinions therein do not amount to evidence that would change the determinations made in this

24   decision according to SSA Regulations."  (AR 28.)  Plaintiff argues that this "statement does not

25   even amount to a 'germane' reason as it does not provide enough specificity to even allow for

26   review."  (Dkt. No. 18 at 20.)  The Court disagrees.

27       The limitations noted in Ms. Chavez's RFC report track Plaintiff's testimony, stating that

28   "[Plaintiff] can't lift more than 10 pounds. Walking up and down stairs is hard and painful. Her

anxiety & depression makes it hard for her to be around a large number of people." (AR 247.)
Ms. Chavez also noted that Plaintiff sometimes has difficulty with household chores. (AR 249.)
Again, these allegations do not set forth greater limitations than Plainitff's own subjective
testimony; thus, any error in the ALJ's treatment of Ms. Chavez's statement is harmless. *See*
*Molina,* 674 F.3d at 1116-17, 1121-22.

**CONCLUSION**

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary
judgment and GRANTS Defendant's cross-motion.

This Order disposes of Docket Nos. 18 and 19.

**IT IS SO ORDERED.**

Dated: September 27, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge